IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RHI, INC.,                          *

    Plaintiff,                 *

      vs.                     * CIVIL ACTION NO. MJG-17-2370

ASHMARK CONSTRUCTION, LLC,          *

                             *

    Defendant

\*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant Ashmark Construction, LLC's Cross Motion for Summary Judgment [ECF No. 8] and the materials submitted relating thereto.[1]  The Court finds that a hearing is not necessary.

I.    BACKGROUND

Plaintiff RHI, Inc. ("RHI"), a commercial flooring contractor incorporated in Maryland, brings an action for damages against Defendant Ashmark Construction, LLC ("Ashmark"), a Michigan limited liability company.  Compl. ¶ 1-3.  Plaintiff alleges breach of contract and, in the alternative, quantum meruit and unjust enrichment.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Plaintiff RHI also filed a Motion for Summary Judgment but has since withdrawn it without prejudice.  See ECF No. 17.

In the fall of 2015, Ashmark and AC Restaurants, LLC ("AC Restaurants") entered into a series of prime contracts, which provided that Ashmark would be the general contractor for the construction build-out of several Tilted Kilt restaurants. Compl. ¶ 7; Def.'s Mot. at 2, ECF No. 8-1. On August 27, 2015, RHI and Ashmark entered into a Subcontractor Agreement ("Agreement"), providing that Ashmark would supply labor and materials for tile and vinyl flooring at three Tilted Kilt restaurants located in Wheaton, Maryland ("Wheaton Restaurant"), Dulles, Virginia ("Dulles Restaurant"), and Annapolis, Maryland ("Annapolis Restaurant"). Compl. ¶ 8; Def.'s Mot. Ex. 1 to Ex. A (Subcontractor Agreement), ECF No. 8-2.

For purposes of this motion, there is no dispute between the parties that the Agreement itself was valid and enforceable and that RHI performed the requested services pursuant to the Agreement. Rather, RHI alleges that Ashmark has failed to pay for the cost of the services provided:

- On the Dulles Restaurant, RHI alleges a modified contract value of $62,443.00, of which Defendant has paid $59,046.20 and owes $3,396.80. Compl. ¶ 10, ECF No. 2.

- On the Annapolis Restaurant, RHI alleges a modified contract value of $53,880.00, of which Defendant has paid $40,410.00 and owes $13,470.00. Id. ¶ 11, ECF No. 2.

- On the Wheaton Restaurant, RHI alleges a modified contract value of $61,175.00, of which Defendant has paid $0.00 and owes the full amount. Id. ¶ 12, ECF No. 2.

RHI alleges that the total amount due in connection with all three restaurants is $78,041.80, and seeks damages, interest, and costs. Compl. ¶¶ 25-26.

Ashmark does not dispute these amounts and concurs that Plaintiff ultimately is entitled to payment but contends that due to "pay-when-paid" provisions within the Agreement, it has no obligation to pay RHI until after it is paid by AC Restaurants. Ashmark contends that it is proceeding reasonably to obtain payment from the customer[2] but has not yet obtained payment so that Plaintiff's claims for immediate payment are barred by the alleged "pay-when-paid" provisions:

- § III.1 Payment Schedule: Contractor shall pay the Subcontractor for the performance of the Work upon receipt of payment by the Owner and subject to additions and deductions by change order or other provisions of this Agreement . . .

- § IV Manner of Payment: . . . Contractor will pay the Subcontractor such amounts within fifteen (15) days after Contractor receives payment from the Owner.

- Exhibit B to the Agreement, entitled "Payment Schedule," which states: "See subsequent purchase orders: Draws Net 10 Days after payment received from Owner."

Def.'s Mot. Ex. 1 to Ex. A, ECF No. 8-2.

---

[2] Ashmark is currently pursuing litigation in state court against AC Restaurants to recover unpaid amounts under the various prime contracts, which include amounts that are owed to RHI. Def.'s Mot. at ¶¶ 6-12.

II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  [t]he Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court

must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

III. DISCUSSION

    A. Breach of Contract

The Court must determine which state contract law to apply, and then decide whether the alleged "pay-when-paid" clause is enforceable.

        i. Choice of Law

The parties do not dispute that this Court must apply Michigan law when interpreting this contract. The applicable law supports this result.

As an initial matter, this Court must follow Maryland choice of law rules. Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013) (holding that "[a] federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules"). Maryland courts recognize that parties' contractual choice-of-law

5

provisions trump rules that would otherwise apply. Id. ("Such choice-of-law provisions 'trump the conflict of law rules that otherwise would be applied by the court'"), quoting Jackson v. Pasadena Receivables, Inc., 398 Md. 611, 617 (2007). Section XVII of the Agreement states that "This Agreement shall be interpreted under the laws of the State of Michigan; unless in conflict with the local state laws where the work is performed, which shall then apply."

Accordingly, the Court will apply Michigan's contract law to this dispute.

### ii. "Pay-When-Paid" Clauses Under Michigan Law

The instant motion presents questions regarding the effect of alleged "pay-when-paid" provisions within the Agreement. Defendant argues that these provisions bar Plaintiff's breach of contract claim because Michigan law recognizes and enforces these types of provisions and thus, Defendant would have no obligation to pay Plaintiff for performed work unless and until Defendant is first paid by AC Restaurants. Def.'s Mot. at 9, ECF No. 8-1. Moreover, Defendant argues, these provisions are not contrary to Maryland public policy such that a Maryland court would refuse to enforce them. Id. at 11.

Plaintiff argues that the relevant provisions do not present "clear and enforceable conditions precedent to payment under Michigan Law." Pl.'s Opp. at 2, ECF No. 16. Plaintiff argues that Michigan cases enforced "pay-when-paid" provisions when the contractual language was "clear and unambiguous condition precedent language." Id. at 3. Plaintiff argues that the contractual language here at issue falls short of creating a clear condition precedent. Id. Furthermore, Plaintiff contends that even if these clauses are enforceable "pay-when-paid" provisions, they still require payment "within a reasonable time," not an indefinite deferral of payment. Id. at 5.

Michigan courts have enforced "pay-when-paid" clauses. See, e.g., Berkel & Co. Contractors v. Christman Co., 210 Mich. App. 416, 419 (1995) (enforcing a pay-when-paid clause which stated: "the receipt of such payments by the [general contractor] being a condition precedent to payments to the subcontractor"); Macomb Mech., Inc. v. LaSalle Grp., Inc., Dkt. No. 319357, 2015 WL 1880189, at *6-7 (Mich. Ct. App. Apr. 23, 2015) (holding that pay-when-paid clauses are "valid" and upholding the circuit court's decision that the relevant clauses bar recovery until the general contractor is first paid); Citadel Corp. v. Eastbank Assocs. Ltd. P'ship, No. 223308, 2002 WL 31105030, at *3 (Mich. Ct. App. Sept. 20, 2002) ("we conclude

that it is not against the public policy of this state to permit the parties to set payment terms, including requiring payment from a third-party as a condition precedent to payment to a subcontractor.").

However, these clauses are construed by Michigan courts to be conditions precedent to performance, and will be enforced if the clause is unambiguous. Macomb Mech, Inc., 2015 WL 1880189 at *7 ("sub-subcontract unambiguously provides that the owner's payment to LaSalle is a condition precedent to Macomb's right to receive payment from LaSalle"); Berkel, 210 Mich. App. at 420 (noting "there is no ambiguity" in the pay-when-paid clause).

This Court must be guided by the Michigan courts' approach to interpretation of contracts. When interpreting a contract, the Court must "determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." In re Smith Tr., 480 Mich. 19, 24 (2008). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties." Id. Moreover, the Court should not make the determination that a condition precedent exists within the

8

contract unless compelled to do so by the language in the contract. Real Estate One v. Heller, 272 Mich. App. 174, 179 (2006) ("unless the contract language itself makes clear that the parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract.").

In the instant contract, the three alleged "pay-when-paid" provisions state:

- § III.1 Payment Schedule: Contractor shall pay the Subcontractor for the performance of the Work upon receipt of payment by the Owner and subject to additions and deductions by change order or other provisions of this Agreement . . .

- § IV Manner of Payment: . . . Contractor will pay the Subcontractor such amounts within fifteen (15) days after Contractor receives payment from the Owner.

- Exhibit B to the Agreement, entitled "Payment Schedule," which states: "See subsequent purchase orders: Draws Net 10 Days after payment received from Owner."

Def.'s Mot. Ex. 1 to Ex. A, ECF No. 8-2.

None of these provisions clearly create a condition precedent to payment. Rather, they merely state the time for payment. The Court finds that there is ambiguity regarding what the parties agreed should happen if AC Restaurants should not pay Ashmark within some reasonable time, or should Ashmark fail to take reasonable steps to obtain payment.

In the event of an ambiguity, "extrinsic evidence can be presented to determine the intent of the parties." In re Smith

9

Tr., 480 Mich. at 24. Therefore, there could be disputes of material fact about the meaning of the contract in regard to these matters so that neither side is entitled to summary judgment on the issues.

The Michigan Court of Appeals has addressed the issues presented by the instant motion in a similar case. See ABC Paving Co. v. Jenkins Const., Inc., No. 270573, 2007 WL 704945, at *2 (Mich. Ct. App. Mar. 8, 2007) ("The parties' contract states merely that the general contractor 'shall pay' the subcontractor 'within seven (7) days' of its receipt of payment from the owner. This language is more in the nature of delineating a time for payment than a condition precedent to payment."). The court in ABC Paving Co. stated that the Berkel result was compelled by virtue of the fact that the contract in Berkel contained "conditional language."[3] No such conditional language exists in the present contract.

This result is consistent when compared to the expressly conditional language of "pay-when-paid" provisions that have been upheld by Michigan courts:

---

[3] Defendant argues that RHI may not rely on ABC Paving Co. because it is "distinguishable on its facts." Def.'s Reply at 9, ECF No. 22. Although it is true that the ABC Paving Co. court dealt with this issue on a different procedural posture, the court's discussion regarding conditional language in "pay-when-paid" clauses does not depend on those factual differences. ABC Paving Co., 2007 WL 704945, at *2.

- <u>Berkel</u>, 210 Mich. App. at 419 ("the receipt of such payments by the [general contractor] <u>being a condition precedent</u> to payments to the subcontractor") (emphasis added).

- <u>Citadel Corp.</u>, 2002 WL 31105030, at *1 ("Final Payment shall not become due <u>unless and until the following conditions precedent to Final Payment have been satisfied</u> . . . (c) receipt of Final Payment for Subcontractor's work by Contractor from Owner.") (emphasis added).

- <u>Artco Contracting, Inc. v. Thomas M. Keranen & Assocs., P.C.</u>, No. 274155, 2007 WL 1428794, at *7 (Mich. Ct. App. May 15, 2007) ("Subcontractor agrees that payment by the Department of Transportation to Principal Contractor for work performed by Subcontractor <u>shall be a condition precedent</u> to any payment obligation of the Principal Contractor to Subcontractor") (emphasis added).

In contrast, the instant contract merely addresses the payment timetable applicable in the ordinary situation in which AC Restaurants promptly pays Ashmark. The Court finds that the instant contract does not contain language making clear that AC Restaurant, LLC's payment to Ashmark is a condition precedent to Ashmark's payment to RHI, and will not read such a requirement into the contract. <u>Real Estate One</u>, 272 Mich. App. at 179 ("our '[c]ourts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language in the contract'").

Although Defendant has not shown that it is entitled to summary judgment, it does not deny that Plaintiff should be paid

11

and only contests the timing of the payments.  Defendant is not seeking to use the alleged "pay-when-paid" clauses to avoid ever making payments, but only as justification for avoiding making payments now.  Moreover, the record does not show that Defendant has been unreasonably slacking in its efforts to resolve its payment disputes with the customer in state court.

The instant case may present a basis for Plaintiff to recover if it were determined that the customer will not pay Defendant ever or within some reasonable time or that Defendant has not reasonably pursued collection from the customer.

### B. Quantum Meruit/Unjust Enrichment

Defendant argues that Plaintiff may not seek quasi-contract damages under quantum meruit and unjust enrichment theories because a written contract already exists.  Def.'s Mot. at 12-13, ECF No. 8-1.  Plaintiff argues that it is simply arguing a valid alternative theory because it cannot anticipate the defenses that Ashmark may raise during litigation.  Pl.'s Opp. at 9, ECF No. 16.

The Court will deny Defendant summary judgment on these claims due to the absence of a record adequate to evaluate the claims.

IV.     REQUEST FOR DISCOVERY

Plaintiff's Opposition to Ashmark Construction, LLC's Cross Motion for Summary Judgment contains a "Request for Discovery Pursuant to Fed. R. Civ. P. 56(d)." Pl.'s Opp. at 7, ECF No. 16. Plaintiff seeks "limited discovery as to the accounting, status and payments made to Ashmark in connection with the projects as well as to any reasons why payment has not been made to Ashmark." Id. Plaintiff explains that it needs discovery on the payments made to Ashmark because otherwise it "cannot possibly present facts otherwise," and it needs discovery on the reasons why Ashmark has not been paid to ascertain whether Ashmark caused the non-payment and is therefore barred from asserting "conditions precedent as grounds to withhold[ing] payment from RHI." Id. at 9.

Defendant counters that RHI has not offered any persuasive basis on which this Court should permit discovery, and has offered "no facts" contradicting or seeking to contradict Ashmark's stated facts. Def.'s Reply at 3, ECF No. 22.

A Rule 56(d) affidavit for discovery must explain why, "for specified reasons, it cannot present facts essential to justify its opposition" without the needed discovery. Fed. R. Civ. P. 56(d). "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" Hamilton v. Mayor & City Council

13

of Baltimore, 807 F. Supp. 2d 331, 341-42 (D. Md. 2011).

Because the Court has found that AC Restaurant, LLC's payment of Ashmark is not a condition precedent to Ashmark's performance of the Agreement, discovery about whether Ashmark caused the non-payment is not relevant to the summary judgment analysis. The Plaintiff will have the opportunity to conduct discovery in the normal course of litigation.

V. CONCLUSION

For the foregoing reasons:

1. Defendant Ashmark Construction, LLC's Cross Motion for Summary Judgment [ECF No. 8] is DENIED.

2. Plaintiff RHI's Request for Discovery, contained in its Opposition to Ashmark Construction, LLC's Cross Motion for Summary Judgment [ECF No. 16] is DENIED.

3. Plaintiff shall arrange a case planning conference to be held by February 12, 2018 to discuss the Scheduling Order to be issued herein.

SO ORDERED, this Tuesday, January 16, 2018.

/s/
Marvin J. Garbis
United States District Judge